UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MIRIAM DELLAROCCA, individually and on behalf
of all others similarly situated,

                              Plaintiff,                       **MEMORANDUM AND ORDER**
    - against -                                                 19-CV-2667 (RRM) (ARL)

ATLANTIC CREDIT & FINANCE, INC.,

                              Defendant.
-------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Plaintiff Miriam Dellarocca brings this action individually and on behalf of all others similarly situated against defendant Atlantic Credit & Finance, Inc. ("ACF") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. Presently before the Court is ACF's motion to compel arbitration of plaintiff's claims on an individual basis and to dismiss the action. (Mot. to Compel Arbitration ("Mot. to Compel") (Doc. No. 15).) For the following reasons, the motion to compel is granted.

## BACKGROUND

**I.    Relevant Facts**

      The following facts are drawn from the complaint as well as declarations submitted with the motion. Unless otherwise noted, the facts are undisputed. On or about November 3, 2013, Dellarocca opened a credit card account (the "Account") with Credit One Bank. (Affidavit of Gary Harwood (Doc. No. 15-2) ¶ 5.) The credit card was mailed together with a copy of Credit One Bank's Visa/Mastercard Cardholder Agreement, Disclosure Statement and Arbitration Agreement, which governed the Account and stated, in relevant part:

> This Agreement, together with the application you previously signed and the
> enclosed Arbitration Agreement, governs the use of your VISA® or Mastercard®

> Account issued by Credit One Bank, N.A. (the "Account," "Card" or "Card Account"). . . . The words "you," "your" and "Cardholder(s)" refer to all persons, jointly and severally, authorizes to use the Card Account; and "we," "us," "our," and "Credit One Bank" refer to Credit One Bank, N.A., its successors or assigns. . . . This Agreement is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence. . . . You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us . . . be submitted to mandatory, binding arbitration. The arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the State law governing this Agreement. . . . Claims subject to arbitration include, but are not limited to, . . . any disclosures or other documents or communications relating to your account. . . . Claims subject to arbitration include . . . Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors. . . . Claims subject to arbitration include Claims based on any theory of law, any contract, [or] statute . . . . This arbitration provision shall survive . . . any transfer or assignment of your account, or any amounts owed on your account, to any other person.

(Harwood Aff., Ex. A ("Agreement") (Doc. No. 15-3) at 2, 5–7.)[1] Dellarocca's billing statements reflect that the last purchase on the Account was made on August 16, 2017, and the final payment posted to the Account was on July 28, 2017. (Harwood Aff., ¶ 7-8 and Exs. B-C (Doc Nos. 15-4, 15-5).) The Account was subsequently charged-off on March 9, 2018, at which point the balance due was $2,420.53 ("the alleged Debt"). (Compl. ¶ 32; *see also* Harwood Aff., ¶ 9.)

On or about March 31, 2018, Credit One Bank "sold, assigned, and conveyed" the Account to MHC Receivables, LLC. (Harwood Aff., ¶ 10.) It was sold again to Sherman Originator III LLC on April 18, 2018, (Harwood Aff., ¶ 12), and finally to Midland Funding, LLC ("Midland") on April 26, 2018. (Compl. ¶ 29; *see also* Affidavit of Adam Swaninger (Doc. No. 15-11), ¶ 5, Ex. 1 (Doc. No. 15-12).) Thereafter, defendant ACF, an affiliate of Midland,

---

[1] Page numbers refer to pagination assigned by the Court's Electronic Case Filing system.

began servicing the Account.  (Swaninger Aff. at ¶ 6.)  In an effort to collect on plaintiff's alleged Debt, ACF contacted Dellarocca by letter dated May 31, 2018.  (Compl. ¶¶ 31–32, Ex. 1 (the "Letter") (Doc. No. 1-1).)

## II.     Complaint and Motion to Compel

Plaintiff commenced this action individually and on behalf of all similarly situated persons in the State of New York on May 6, 2019, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, based on the Letter.  (*Id.* ¶¶ 35–96.)  On February 3, 2020, ACF moved to compel arbitration of plaintiff's claims on an individual basis and dismiss the action entirely.  (Mot. to Compel (Doc. No. 15).)  ACF argues that Dellarocca's claims fall within the scope of a valid and enforceable arbitration agreement and that ACF is entitled to enforce the arbitration agreement under the Federal Arbitration Act.  (*Id.* at 11–17.)  ACF further maintains that arbitration must be compelled on an individual basis because plaintiff waived the right to participate in a class action.  (*Id.* at 17–18.)

Dellarocca opposes the motion to compel, arguing that ACF lacks standing to enforce the Agreement "as an alleged agent of the tertiary assignee of the alleged debt."  (Mem. in Opp'n (Doc. No. 16) at 5–7.)  Dellarocca contends that ACF's ability to enforce the agreement is governed by Nevada law, and that under Nevada law, ACF cannot compel arbitration.  (*Id.* at 5.)  In reply, ACF contends that, as Midland's affiliate, it can compel arbitration of this claim based on the plain language of the Agreement and as a third-party beneficiary.  (Mem. in Reply (Doc. No. 15-17) at 6–9.)  In reaching this conclusion, ACF argues that federal law, not Nevada law, applies, but that under either law, it is entitled to compel arbitration.  (*Id.* at 9–10.)

**STANDARD OF REVIEW**

In evaluating a motion to compel arbitration under the Federal Arbitration Act ("FAA"), courts apply a similar standard to that of a motion for summary judgment. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability."). Where a motion to compel arbitration "is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." *Mazza Consulting Group, Inc. v. Canam Steel Corp.*, No. 08-CV-38 (NGG), 2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008).

**DISCUSSION**

**I.    Agreement to Arbitrate**

In determining whether a claim should be arbitrated, the Court must determine (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) "if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." See *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank. FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)).

Dellarocca does not dispute the enforceability of the arbitration agreement. The arbitration provision in this case stipulated that by "signing or using" the credit card, Dellarocca agrees to its terms. (Agreement at 2.) Since it is undisputed that Dellarocca used the credit card

4

to make several purchases, (*see* Harwood Aff., Ex. C), the Court finds that she agreed to the terms of the arbitration agreement at issue here.[2]

The parties also do not contest that the dispute here "falls within the scope of that agreement." *Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*, 85 F.3d 21, 25 (2d Cir. 1996); *see also United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83, (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."). The arbitration provision here broadly covers "any […] matters relating to [Dellarocca's] account," and expressly includes "any disclosures or other documents or communications relating to your account," as well as claims based on any "theory of law, contract, [or] statute." (Agreement at 6.) Dellarocca's FDCPA claim arises from a "document[] or communication[]" relating to her account and is thus comfortably within the "scope" of arbitrable issues. (*Id.*)

Finally, the third prong of the test, whether Congress intended for the claims to be nonarbitratable, "presents no barriers to arbitration" with respect to FDCPA claims. *Fedotov v. Peter T. Roach and Associates, P.C.*, No. 03-CV-8823 (CSH), 2006 WL 692002 (S.D.N.Y. Mar. 16, 2006). The fourth prong of the test, dealing with circumstances in which a court finds only

---

[2] This is true whether New York or Nevada law applies to the enforceability of the arbitration agreement. *See Biggs v. Midland Credit Management, Inc.*, No. 17-CV-340 (JFB) (ARL), 2018 WL 1225539, at *6 (E.D.N.Y. Mar. 9, 2018) (explaining that arbitration agreements do not determine the relevant law where a non-moving party challenges the validity of the agreement to arbitrate and applying New York law after engaging in choice-of-law analysis). Under both Nevada and New York law, plaintiff's use of a credit card constitutes consent to the terms of the applicable arbitration agreement. Nev. Rev. Stat. Ann. § 97.A.140 ("A cardholder shall be deemed to have accepted the written terms and conditions provided by the issuer upon subsequent actual use of the credit card."); *Bakon v. Rushmore Serv. Ctr., LLC*, No. 16-CV-6137, 2017 WL 2414639, at *2 (E.D.N.Y. Jun. 2, 2017) ("Under . . . . New York . . . law, 'regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account.'" (citing *McCormick v. Citibank*, No. 15-CV-46 (JTC), 2016 WL 107911, at *4 (W.D.N.Y. Jan. 8, 2016)).

5

some of the claims arbitrable, does not apply here because, as explained below, the Court concludes that ACF may compel arbitration of all of Dellarocca's claims.

## II.     Enforcement of Arbitration Agreements by Non-Signatories

The parties disagree as to whether federal law or Nevada law applies to the question of whether ACF, a non-signatory, can enforce the Agreement as an affiliate of assignee Midland. The Court does not need to resolve this question, however, because federal and Nevada law are substantively identical on this issue.  In the Second Circuit, "A non-party may compel arbitration where 'traditional principles of state law' such as 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel' render an arbitration agreement enforceable at the non-party's behest." *Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 609 (S.D.N.Y. 2011) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)), *aff'd sub nom. The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11 (2d Cir. 2012).  Nevada courts recognize the same theories, including the rights of third-party beneficiaries to compel arbitration.  *See Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 634 (2008).

ACF is entitled to enforce this Agreement as a third-party beneficiary.  Both federal law and Nevada law follow the Restatement (Second) of Contracts's approach to determining whether a party is a third-party beneficiary to a contract.  *See Davis v. United Air Lines, Inc.*, 575 F. Supp. 677, 680 (E.D.N.Y. 1983); *Speleos v. BAC Home Loans Servicing, L.P.*, 755 F. Supp. 2d 304, 308 (D. Mass. 2010); *Rose, LLC v. Treasure Island, LLC*, 135 Nev. 145, 155 (Nev. App. 2019).  Under the Restatement, a party is a third-party beneficiary if "[1] recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and [2] the circumstances indicate that the promisee intends to give the beneficiary the benefit of the

promised performance." Restatement (Second) of Contracts § 302 (1981); *see also Warner v. City of Reno*, 126 Nev. 767 (2010) ("In reviewing whether an individual is a third-party beneficiary of a contract, we look at whether the contracting parties demonstrated a clear intent to benefit the third party and whether the third party's reliance was foreseeable.").

The Agreement provides for arbitration of claims "that relate directly to us, a parent company, affiliated company, and any predecessors and successors," and defines "us" to include Credit One's "successors or assigns." (Agreement at 2, 6.) This contract thus expressly contemplated enforcement by third-party affiliates of assigns, such as ACF. Given that the agreement contemplated arbitration of "any […] matters relating to [Dellarocca's] account," including "any disclosures or other documents or communications relating to your account" and claims based on any "theory of law, contract, [or] statute," (Agreement at 6), the Court finds that ACF's enforcement of the Agreement was foreseeable and intended under the contract. *See Bakon v. Rushmore Serv. Ctr., LLC*, No. 16-CV-6137, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) (holding that affiliate of signatory to arbitration agreement contemplating enforcement by "affiliates" and "assigns" could compel arbitration as third-party beneficiary). Accordingly, the Court finds that ACF is a third-party beneficiary entitled to compel arbitration of Dellarocca's FDCPA claims pursuant to the Agreement.

In arguing that ACF cannot compel arbitration, Dellarocca points to the decision in *Wojcik v. Midland Funding, LLC*, No. 18-CV-3628 (MKB) (RML), 2019 WL 3716200 (E.D.N.Y. Jun. 3, 2019), *report and recommendation adopted sub nom. Wojcik v. Midland Credit Mgmt., Inc.*, No. 18-CV-3628 (MKB) (RML), 2019 WL 3423567 (E.D.N.Y. July 30, 2019), which held under Utah law that a non-signatory debt collector could not enforce arbitration. The Court in that case considered whether the debt collector could enforce the

arbitration agreement as a third-party beneficiary. The Court ultimately concluded that the debt collector was not a third-party beneficiary because, under Utah law, a party is considered a third-party beneficiary only where the contract manifests an intention to confer a "separate and distinct benefit" on the third party. *See Wojcik*, 2019 WL 3716200 at *4; *see also Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057–58 (10th Cir. 2018) (explaining that under Utah law, third parties can only enforce contracts under the "rare circumstances" that the contract "express[es] an intention to confer a separate and distinct benefit on the third party" (internal quotation marks and citation omitted)). Because Federal law and Nevada law are not similarly restrictive, *Wojcik* is inapplicable here.

### III. Staying or Dismissing the Case

Finally, because the Second Circuit has held that "a mandatory stay is consistent with the FAA's underlying policy 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible,'" the Court declines to dismiss this action absent the consent of Dellarocca. *Katz v. Cellco Partnership*, 794 F.3d 341, 346 (2d Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). Accordingly, this action is stayed pending the outcome of arbitration.

### CONCLUSION

For the reasons set forth above, ACF's motion to compel arbitration on an individual basis is granted, and the case is stayed pending the outcome of arbitration.

SO ORDERED.

Dated: Brooklyn, New York
       September 28, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge